# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

VICTOR HARTSOOK,

     Petitioner,     :  Case No. 1:15-cv-598

 - vs -            District Judge Susan J. Dlott
               Magistrate Judge Michael R. Merz

MICHELLE MILLER, WARDEN,
 Belmont Correctional Institution,

             :

     Respondent.

# REPORT AND RECOMMENDATIONS

This habeas corpus case, brought pro se by Petitioner Victor Hartsook, is before the Court for decision on the merits.  The Court has before it the Petition (ECF No. 3), the State Court Record (ECF No. 10), a Return of Writ (ECF No. 11), and Petitioner's Traverse and Reply (ECF No. 15).

As with all habeas corpus cases filed in this District, the case has been referred to a United States Magistrate Judge for a recommended disposition.  28 U.S.C. § 636(b)(1)(B).  The case was recently transferred to the undersigned Magistrate Judge to balance the workload among Western Division Magistrate Judges and prevent undue delay in deciding these cases.

## Procedural History

Petitioner Victor Hartsook was indicted by the Warren County grand jury on two counts

1

of operating a motor vehicle under the influence of alcohol,[1] one count under Ohio Revised Code § 4511.19(A)(1)(a) and one count under Ohio Revised Code § 4511.19(A)(1)(h). *State v. Hartsook*, 2014-Ohio-4528, ¶ 2, 2014 Ohio App. LEXIS 4440 (12th Dist, Oct. 13, 2014) (hereafter "State v. Hartsook"). Each count carried the specification under Ohio Revised Code § 2941.1413(A) that Hartsook had, within the previous twenty years, been convicted of five or more equivalent offenses (Indictment, State Court Record, ECF No. 10, PageID 116).

Hartsook eventually waived his right to trial and pleaded guilty to one of the counts plus a specification. *State v. Hartsook, supra,* at ¶ 3. Hartsook did not appear for sentencing when ordered. He was arrested in December 2013 and then sentenced to consecutive terms of two years for the OVI offense and four years for the specification. *Id.* at ¶ 7. The Twelfth District affirmed the conviction. *Id.* The Ohio Supreme Court allowed Petitioner to file a delayed appeal, but then declined to accept jurisdiction. *State v. Hartsook*, 2015-Ohio-2341, 2015 Ohio LEXIS 1577 (2015). Hartsook then timely filed his Petition in this Court on September 16, 2015.

Petitioner pleads the following grounds for relief:

> **Ground One**: THE TWELFTH DISTRICT COURT OF APPEALS ABUSED THEIR DISCRETION ERRING TO THE PREJUDICE OF THE APPELLANT BY ALLOWING THE APPELLANT'S GUILTY PLEA TO REMAIN BINDING.
>
> > **Issue presented for review**: A " [sic] guilty plea is not knowingly, voluntarily, or intelligently made when a defendant is given inconsistent, conflicting and incorrect information about the mandatory sentences required for his convictions.

---

[1] The court of appeals refers to the offenses as "operating a vehicle while intoxicated" while the statute calls the offenses "operation while under the influence."

2

**Ground Two:** THE TRIAL COURT ERRED IN SENTENCING THE DEFENDANT IN VIOLATION OF THE DOUBLE JEOPARDY CLAUSE OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION, ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.

> **Issue presented for review:** An additional sentence on a specification based on prior offenses places a defendant in double jeopardy when his offense to which the specification attached was already enhanced to a higher degree of punishment due to the same prior offenses.

**Supporting Facts:** The trial court erred and the Twelfth District Court of Appeals violated Mr. Hartsook's rights to be free from double jeopardy when the trial court sentenced Mr. Hartsook to an additional 4 years for a specification based on prior offenses, consecutive to his underlying felony sentence which was already enhanced to a higher degree of punishment for the same priors (facts). (See additional pages attached)

**Ground Three**: THE TRIAL COURT ERRED IN SENTENCING THE DEFENDANT IN VIOLATION OF DUE PROCESS AND EQUAL PROTECTION OF THE LAWS PURSUANT TO THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION, ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.

> **Issue presented for review:** An additional sentence on a specification based on prior offenses is a denial of equal protection and due process of law where the specification is based on the same facts/information and convictions that elevate the offense to a higher offense level before application of the specification.

**Supporting Facts:** Both the Ohio and United States Constitutions provide that no person shall be deprived of life, liberty, or property without due process of law or be denied the equal protection of the law. Ohio Constitution, Article I, Section 2; Fourteenth Amendment to the U.S. Constitution. " [sic] Every person has a fundamental right to liberty in the sense that the Government may not punish him unless and until it proves his guilt beyond a reasonable doubt at a criminal trial conducted in accordance with the relevant constitutional guarantees.

(Petition, ECF No. 3, PageID 60-63.)

3

# Analysis

**Ohio Constitutional Claims**

In both Grounds Two and Three, Petitioner pleads claims purporting to arise under the Ohio Constitution. Federal habeas corpus is available only to correct federal constitutional violations. 28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982); *Barclay v. Florida,* 463 U.S. 939 (1983). "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). The Ohio constitutional portions of Grounds Two and Three do not state claims upon which federal habeas corpus relief can be granted.

**Standard for Review of Constitutional Decisions by the State Courts**

The Warden does not raise any procedural defenses to Mr. Hartsook's claims, but rather defends on the merits. When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005);

4

*Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000). The Twelfth District Court of Appeals decided all of Mr. Hartsook's federal constitutional claims on the merits. His burden in this Court under 28 U.S.C. § 2254(d) is to show that that decision was contrary to or an objectively unreasonable application of clearly established United States Supreme Court decisional law.

**Ground One: Invalid Guilty Plea**

In his First Ground for Relief, Mr. Hartsook claims his plea of guilty was not knowing intelligent, and voluntary and therefore is not valid. The invalidating facts are said to be the contradictory information he was given about the possible sentences he could receive as a result of his guilty plea.

This claim was raised as the first assignment of error on direct appeal and the Twelfth District decided it as follows:

> **[\*P8]** Assignment of error No. 1:
>
> **[\*P9]** THE TRIAL COURT ERRED IN ACCEPTING DEFENDANT'S GUILTY PLEA.
>
> **[\*P10]** In his first assignment of error, Hartsook argues that his plea was not knowing, intelligent, and voluntary because he was given inconsistent, conflicting, and incorrect information about the mandatory sentences he faced. Hartsook notes that the plea form incorrectly indicates that a mandatory prison term was "N/A" for the OVI specification, yet the trial court told him the specification carried a mandatory prison term. He also points out that the court told him the minimum mandatory sentence was one year for the specification and 30 days for the underlying OVI charge, for an aggregate of 13 months. He asserts that he really faced a minimum mandatory sentence of two years. [Footnote omitted.] Hartsook claims that had he been provided with accurate information,

5

"different considerations would be made, and a plea might not even be made at all."

[*P11] The defendant's plea in a criminal case is invalid if not made knowingly, intelligently, and voluntarily. *State v. Ackley*, 12th Dist. Madison No. CA2013-04-010, 2014-Ohio-876, ¶ 8, citing *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, ¶ 7, 897 N.E.2d 621. Failure on any of those points renders enforcement of the plea unconstitutional under both the United States and Ohio Constitutions. *State v. Hendrix*, 12th Dist. Butler No. CA2012-12-265, 2013-Ohio-4978, ¶ 8.

[*P12] Crim.R. 11(C) facilitates an accurate determination as to whether a plea to a felony charge meets these criteria by ensuring an adequate record for review. *State v. Nero*, 56 Ohio St.3d 106, 107, 564 N.E.2d 474 (1990). Crim.R. 11(C)(2) requires the trial court to hold a plea colloquy with the defendant for the purposes of:

> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
>
> (b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
>
> (c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

In conducting this colloquy, the trial judge must convey accurate information to the defendant so that the defendant can understand the consequences of his decision and enter a valid plea. *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, ¶ 26, 893 N.E.2d 462.

[*P13] A guilty plea is invalid if the trial court does not strictly

6

comply with Crim.R. 11(C)(2)(c), which requires the court to verify the defendant understands the constitutional rights that he is waiving. *Ackley* at ¶ 9, citing *Veney* at ¶ 31. But a court need only substantially comply with the nonconstitutional notifications required by Crim.R. 11(C)(2)(a) and (b). *Ackley* at ¶ 9. Under the substantial compliance standard, the appellate court must review the totality of the circumstances surrounding the defendant's plea and determine whether he subjectively understood the effects of his plea. *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, ¶ 20, 881 N.E.2d 1224.

[*P14] It is undisputed that the trial court strictly complied with the constitutional requirements of Crim.R. 11(C)(2)(c). With respect to the required notifications regarding constitutional rights, the court advised Hartsook that a guilty plea would waive his rights to have the matter tried before the court, to require the state to prove his guilt beyond a reasonable doubt, to confront witnesses against him, and to subpoena witnesses in his defense. The court also noted that Hartsook had previously waived his right to a trial by jury. Hartsook affirmed that he understood the rights he was waiving.

[*P15] However, we find that the court failed to substantially comply with the nonconstitutional notifications of Crim.R. 11(C)(2)(a) and (b). The miscommunication regarding the mandatory portion of Hartsook's potential sentence was too significant to allow the conclusion that he subjectively understood the effects of his plea. Indeed, Hartsook's plea form suggested there was no mandatory prison term for *either* the specification or the underlying OVI charge. Yet during the plea hearing, the trial court advised Hartsook that there was a mandatory prison term for *both*. As will be discussed below, neither instance was accurate.

[*P16] But our analysis does not end there. If, as here, the appellate court finds the trial court did not substantially comply with Crim.R. 11(C)(2)(a) and (b), then it must make a further determination as to whether the trial court at least partially complied. *Hendrix*, 2013-Ohio-4978 at ¶ 11, citing *Clark*, 119 Ohio St.3d at ¶ 32. If the trial court wholly failed to comply, the plea must be vacated. *Sarkozy*, 117 Ohio St.3d at ¶ 22. If, on the other hand, the trial court partially complied, then the plea will not be vacated unless the defendant can show he was prejudiced by the extent to which the trial court was in noncompliance. *Hendrix* at ¶ 11.

[*P17] We find that although it did not substantially comply, the

trial court did at least partially comply with Crim.R. 11(C)(2)(a) and (b). The trial court accurately informed Hartsook of the maximum sentence he could receive: the change of plea form and the plea colloquy correctly indicated that the OVI charge carried a maximum 36-month prison term and the specification carried a maximum five-year prison term, for an aggregate maximum of up to eight years. Moreover, the trial court made it clear in the plea colloquy that it was required to run the mandatory prison term for the specification consecutive to any time it elected to give Hartsook on the underlying OVI charge. Finally, the trial court properly noted that after Hartsook's prison sentence, the Adult Parole Authority also had the option of placing him on up to three years of postrelease control.

[*P18] Therefore, to prevail on his claim that his plea was not knowingly, intelligently, and voluntarily made, Hartsook must show that he was prejudiced by the extent to which the trial court was in noncompliance with Crim.R. 11(C)(2)(a) and (b). A determination of whether or not the defendant has met this burden is based upon a review of the record. *State v. Messer*, 12th Dist. Clermont No. CA2008-04-039, 2009-Ohio-929, ¶ 39, citing *State v. Spates*, 64 Ohio St.3d 269, 272, 1992 Ohio 130, 595 N.E.2d 351 (1992). The test is whether the plea would have otherwise been made. *Messer* at ¶ 42.

[*P19] We are not persuaded by Hartsook's contention that he was prejudiced by the miscommunication regarding his potential sentences. To begin with, Hartsook claims merely that if he had been accurately informed of his minimum mandatory sentence, his plea "*might* not even be made at all." That is not the standard. To demonstrate prejudice, Hartsook must show, based upon the record, that his plea *would* not be made. *See Ackley*, 2014-Ohio-876 at ¶ 9, citing *Nero*, 56 Ohio St.3d at 108.

[*P20] Moreover, Hartsook is misguided in his claim that even though the trial court led him to believe his minimum mandatory prison term would be 13 months, he was actually facing at least a two-year mandatory prison term. Hartsook was convicted of one OVI offense in violation of R.C. 4511.19(A)(1)(a), and an accompanying repeat offender specification under R.C. 2941.1413. The minimum sentence that Hartsook could have received for his convictions under these statutes was one year; not the13 months communicated by the trial court, and not the two years he now claims. [footnote omitted] The trial court overstated, not understated, Hartsook's minimum mandatory sentence.

**[\*P21]** R.C. 4511.19(G)(1)(e)(i) provides that an offender who previously has been convicted of or pleaded guilty to a felony OVI, and who is also convicted of a specification of the type described in R.C. 2941.1413, must be sentenced to a mandatory prison term for the specification as required by R.C. 2929.13(G)(2). In addition, R.C. 4511.19(G)(1)(e)(i) allows that "[t]he court *may* impose a prison term [for the underlying OVI offense] in addition to the mandatory prison term." (Emphasis added.)

**[\*P22]** R.C. 2929.13(G)(2) provides that if an offender is being sentenced for a third-degree felony OVI offense and the accompanying specification under R.C. 2941.1413, then "the [sentencing] court shall impose upon the offender a mandatory prison term of one, two, three, four, or five years" for the specification. This prison term must be served "consecutively to and prior to the prison term for the underlying offense." R.C. 2929.13(G)(2). Significantly, although it implies that the sentencing court *may* do so, R.C. 2929.13(G)(2) does not *require* the imposition of a prison term for the underlying offense over and above the mandatory term for the specification.

**[\*P23]** Finally, R.C. 2929.14(B)(4) provides that if an offender is being sentenced for a third-degree felony OVI offense under R.C. 2929.13(G)(2), "the sentencing court shall impose upon the offender a mandatory prison term in accordance with [R.C. 2929.13(G)(2)]." As noted above, the mandatory prison term here referenced is the mandatory one, two, three, four, or five years for the specification. Additionally, "the sentencing court *may* sentence the offender to an additional prison term of any duration specified in division R.C. 2929.14(A)(3) * * *." (Emphasis added.) R.C. 2929.14(B)(4). R.C. 2929.14(A)(3)(b) specifies that the additional term may be nine, twelve, eighteen, twenty-four, thirty, or thirty-six months.

**[\*P24]** In short, the only mandatory prison time that Hartsook faced was for the specification under R.C. 2941.1413; a prison term for the underlying OVI offense was discretionary. And the minimum mandatory term for the specification, in accordance with R.C. 2929.13(G)(2), was one year. Therefore, Hartsook's assertion that he was prejudiced because the trial court led him to believe he faced a minimum mandatory prison term of 13 months is without merit. In fact, he faced a minimum mandatory prison term of only 12 months.

[\*P25] There are no other bases in the record upon which Hartsook could base a claim of prejudice. In exchange for Hartsook's plea, the state dropped two charges, the OVI under R.C. 4511.19(A)(1)(h) and the accompanying specification under R.C. 2941.1413. He affirmed during the colloquy that no other promises had been made to him by the state. In addition, Hartsook received less than the maximum prison term on both of the charges for which he was convicted, and he received the minimum as opposed to the maximum fine. *See, e.g., State v. Jones*, 12th Dist. Warren No. CA2002-10-113, 2003-Ohio-2926, ¶ 13-14 (declining to find prejudice where the offender had two charges dropped, and received a prison sentence and fine below the respective maximums allowed by law).

[\*P26] Yet perhaps most striking is that the record indicates Hartsook's relatively harsh sentence was largely the result of his own disregard for the law. At the conclusion of the hearing, the court allowed Hartsook to remain free on bail until his sentencing hearing the following month. However, before going off the record, the court reiterated:

> THE COURT: Mr. Hartsook, you have to come back for sentencing sometime in the middle of November. You will not drive a motor vehicle at all for any reason and you will not drink any alcohol. If you do you're subject to far more serious penalties then [sic] I intend to impose upon you.
>
> I can sentence you for up to eight years in prison for this, counting the specification and the operating a motor vehicle while impaired and the specification is a mandatory sentence, as I've already told you, so you're going to prison.
>
> How long you go to prison for though is partially dependent upon you. If you get into any more trouble whatsoever with the police you're going to get a far more harsher [sic] sentence * * * you understand that?
>
> [HARTSOOK]: Yes sir.

Notwithstanding the court's warning, Hartsook did not appear at his sentencing hearing the following month.

[\*P27] When the sentencing hearing was finally held, more than two months after his change of plea hearing, Hartsook beseeched

the court for leniency. He argued that his failure to appear was simply the result of the despair he felt when he realized the destructive effect his drinking had on his family and his career. In response, the court noted:

> THE COURT: This is his third felony OVI offense, having been sentenced from this court in '95 and Green [sic] County in '07 and this time he tested [.176 blood alcohol level]. I'm afraid I have no reasonable expectation that he's going to stop drinking and driving, so it's therefore my responsibility to keep him away from society. He's demonstrated that he will not comply with the rules of the law or this court, didn't even bother to show up for sentencing, so he has no willingness to change his behavior * * *.

**[*P28]** Based upon this record, we decline to find that Hartsook was prejudiced by the trial court's failure to substantially comply with Crim.R. 11(C)(2)(a) and (b). Hartsook's first assignment of error is overruled.

*State v. Hartsook,* 2014-Ohio-4528, 2014 Ohio App. LEXIS 4440 (12th Dist, Oct. 13, 2014).

As can be seen, the Twelfth District divided its analysis on the voluntariness of the guilty plea into the constitutional requirements and the nonconstitutional requirements.  It concluded that it was undisputed that "the trial court strictly complied with the constitutional requirements of [Ohio] Crim. R. 11(C)(2)(c)." *Id.* at ¶ 14.  Just as he did not dispute this point before the state courts, Hartsook does not dispute it here.

Instead he claims that there was a mandatory minimum two-year sentence (one year on the OVI offense and one consecutive year on the specification) of which he was not advised.  He made this same claim about the mandatory sentence in the Twelfth District which indicated he was wrong and that the mandatory sentence was only twelve months. *Id.* at ¶ 10, n. 1.  That is a question of Ohio law, not federal law, and this Court cannot second guess what the Ohio law is

11

for this conviction; we are bound by the state court determination.  *Estelle v. McGuire, supra.*

The trial court judge without doubt misstated the mandatory minimum sentence but overstated by one month, telling Hartsook it was thirteen months instead of twelve. Based on the overstated mandatory minimum, Hartsook pleaded guilty.  The Twelfth District found this nonconstitutional error was harmless because Hartsook could show no prejudice:  if it was an acceptable plea bargain at thirteen months, it would not have been rational to reject the bargain when the "price" in terms of months of imprisonment was lowered.

Federal law provides that a plea of guilty is valid if, but only if, it is entered voluntarily and intelligently, as determined by the totality of the circumstances.  *Brady v. United States,* 397 U.S. 742, 748 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969); *King v. Dutton*, 17 F.3d 151 (6th  Cir. 1994); *Riggins v. McMackin*, 935 F.2d 790, 795 (6th  Cir. 1991); *Berry v. Mintzes,* 726 F.2d 1142, 1146 (6th  Cir. 1984).  The determination of whether a plea was intelligently made depends upon the particular facts and circumstances of each case.  *Johnson v. Zerbst,* 304 U.S. 458, 463 (1938); *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993).  In order for a guilty plea to be constitutional it must be knowing, intelligent, voluntary, and done with sufficient awareness of the relevant circumstances and likely consequences. *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005). The defendant must also be aware of the maximum sentence that can be imposed for the crime for which he is pleading. *King v. Dutton*, 17 F.3d 151, 154 (6th Cir. 1994).

Petitioner argues the Twelfth District "unreasonably failed to apply the well established precedent of the Supreme Court. . ." (Traverse, ECF No. 15, PageID 395, citing *Bradshaw, supra*, and *Brady, supra*.)  *Bradshaw* and *Brady* are both pre-AEDPA cases, so a different

standard of review was involved.[2]  *Bradshaw* was a guilty plea capital case in which the

Supreme Court reversed a Sixth Circuit finding the plea was not valid.  Justice O'Connor wrote

for the *Bradshaw* Court:

> Stumpf's guilty plea would indeed be invalid if he had not been aware of the nature of the charges against him, including the elements of the aggravated murder charge to which he pleaded guilty. A guilty plea operates as a waiver of important rights, and is valid only if done voluntarily, knowingly, and intelligently, "with sufficient awareness of the relevant circumstances and likely consequences." *Brady* v. *United States,* 397 U.S. 742, 748, 25 L. Ed. 2d 747, 90 S. Ct. 1463 (1970). Where a defendant pleads guilty to a crime without having been informed of the crime's elements, this standard is not met and the plea is invalid. *Henderson* v. *Morgan,* 426 U.S. 637, 49 L. Ed. 2d 108, 96 S. Ct. 2253 (1976).

545 U.S. at 182-83.  The Twelfth District's conclusion is not contrary to *Bradshaw* because

Hartsook does not claim here and did not claim in that court that the elements of the offense and

specification with which he was charged had not been explained to him.  In *Brady* the Supreme

Court held that the availability of the death penalty as a possible sentence for violation of the

Federal Kidnapping Act did not render a bargained-for guilty plea that eliminated the capital

specification inherently coercive.  397 U.S. at 749-51.

 Hartsook also cites *Boykin v. Alabama*, 395 U.S. 238 (1969)(Traverse, ECF No. 15,

PageID 396).  There the Court held that waivers of the privilege against compulsory self-

incrimination and the rights to jury trial and confrontation of accusers cannot be presumed from

a silent record.  *Boykin*, 395 U.S. at 242-43.  The Twelfth District made no such presumption.

Hartsook's citation of *United States v. Benitez,* 542 U.S. 74 (2004), is likewise unavailing and in

fact supports what the Twelfth District did, holding that relief for error in accepting a guilty plea

requires a showing by the defendant that, but for the error, he would have insisted on going to

---

[2] Although *Bradshaw* was decided after AEDPA was enacted in 1996, it was filed before then.  545 U.S. at 182.

trial.  *Id.* at 83.

Hartsook argues that he was promised by the prosecutor that the count and specification to which he was pleading had no mandatory minimum sentence.  He is correct that an unfulfilled promise in a plea agreement entitles a habeas petitioner to relief, either vacation of the plea or specific enforcement of the promise.  But the document he relies on, the Change of Plea and Entry (State Court Record, ECF No. 10, PageID 120), is not an integrated written plea agreement that spells out the reciprocal obligations of prosecution and defense.  Instead, it reflects an oral plea agreement and, to some extent (i.e. by actually dismissing Count 2 and its specification) carries it out. The language to which Hartsook refers in his that entry is not a promise, but a mistaken representation by the State about the mandatory minimum on the specification.  Indeed, the document contains Hartsook's own representation that "[n]o promises have been made to me to secure my plea of GUILTY."  *Id.*

Mr. Hartsook has not shown that the Twelfth District's decision on the validity of his guilty plea is an unreasonable application of the relevant Supreme Court precedent.  His First Ground for Relief should therefore be dismissed.

**Ground Two:  Double Jeopardy**

In his Second Ground for Relief, Petitioner asserts that his sentence violates his rights under the Double Jeopardy Clause of the Fifth Amendment.  This was the first part of his second assignment of error on appeal and the Twelfth District decided it as follows:

### 1. Double Jeopardy

**[\*P32]** In the first principal argument of his second assignment of

14

error, Hartsook notes that his OVI offense in violation of R.C. 4511.19(A)(1)(a) was a felony of the third degree, instead of a misdemeanor of the first degree, due to his prior OVI convictions. He acknowledges there is clear precedent finding that a repeat offender may be sentenced more harshly than a first-time offender without violating double jeopardy. However, Hartsook also notes that the OVI sentencing regime uses the very same convictions that were used to enhance his punishment for the underlying OVI offense to impose an additional sentence for the repeat OVI offender specification under R.C. 2941.1413. Further, he argues that the R.C. 2941.1413 specification imposes a punishment *solely* for his recidivist history, and not for the predicate offense. Hartsook claims this results in a double jeopardy violation because he receives multiple punishments for his prior convictions.

[*P33] The double jeopardy clause of the Fifth Amendment of the United States Constitution provides that "[n]o person shall * * * be subject for the same offense to be twice put in jeopardy of life or limb." Similarly, Article I, Section 10 of the Ohio Constitution provides [n]o person shall be twice put in jeopardy for the same offense." These clauses are sufficiently similar to warrant consultation of federal jurisprudence when analyzing Ohio's double jeopardy protections. *State v. Rance*, 85 Ohio St.3d 632, 634, 1999 Ohio 291, 710 N.E.2d 699 (1999), *overruled on other grounds, State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061. They both operate to provide two basic protections: they guard citizens against successive prosecutions and cumulative punishments for the "same offense." *Rance* at 634. *See also North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969) (expressing the same notion in terms of three basic protections: against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense).

[*P34] It is well-settled that the imposition of an enhanced punishment for repeat offenders does not violate the double jeopardy protection against successive prosecutions for a single offense. *United States v. Rodriquez*, 553 U.S. 377, 386, 128 S.Ct. 1783, 170 L. Ed. 2d 719 (2008) (noting that a sentence which is enhanced due to prior convictions is a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one); *State v. Adkins*, 129 Ohio St.3d 287, 2011-Ohio-3141, ¶ 15, 951 N.E.2d 766 (finding the defendant's enhanced sentence for multiple OVI convictions was punishment for his current offense, not his prior OVI offenses). Although this

15

court has not ruled on the issue as it relates to either the OVI sentencing regime or specifications which enhance a sentence due to an offender's prior convictions, our prior decisions regarding the relationship between specifications and their predicate offenses are consistent with these decisions. *See, e.g., State v. Highfield*, 12th Dist. Brown No. CA2013-05-007, 2014-Ohio-165, ¶ 7-8 (finding a juvenile specification under R.C. 2925.04(C)(3)(b) is not a "separate offense," but a penalty enhancement for the underlying offense). Hence, we turn to whether Hartsook's sentence violates the double jeopardy protections against cumulative punishment.

[*P35] In contrast to the double jeopardy protection against successive prosecutions, the protection against cumulative punishments ensures that "the sentencing discretion of courts is confined to the limits established by the legislature." *Ohio v. Johnson*, 467 U.S. 493, 499, 104 S.Ct. 2536, 81 L. Ed. 2d 425 (1984). In other words, where a defendant asserts that the state contravened the double jeopardy clause by leveling cumulative punishment for a single offense, "the proper ambit of appellate review is limited to ensuring that the trial court did not exceed the sentencing authority which the General Assembly has permitted the judiciary." *State v. Moss*, 69 Ohio St.2d 515, 518, 433 N.E.2d 181 (1982), citing *Albernaz v. United States*, 450 U.S. 333, 101 S.Ct. 1137, 67 L. Ed. 2d 275 (1981). "Therefore, if it is evident that a state legislature intended to authorize cumulative punishments, then [the appellate] court's inquiry is at an end." *State v. Dodson*, 12th Dist. Butler No. CA2010-08-191, 2011-Ohio-6222, ¶ 30.

[*P36] In the past, this court has applied the above reasoning to find no double jeopardy violation where a firearm specification and a specification involving prior conviction for an offense of violence attached to one count of having a weapon while under disability. *State v. Greco*, 12th Dist. Butler No. CA95-06-101, 1996 WL 31147[,1996 Ohio App. LEXIS 225, 1996] (Jan. 29, 1996). We concluded in *Greco* that the offender's enhanced sentence did not constitute double jeopardy because it was clear the General Assembly specifically authorized cumulative punishment. Id. at *3[,1996 Ohio App. LEXIS 225]. Several recent cases in other appellate districts have applied similar reasoning in the context of an OVI offense in violation of R.C. 4511.19 and the repeat OVI offender specification in R.C. 2941.1413. *See, e.g., State v. Bode*, 5th Dist. Fairfield No. 12-CA-33, 2013-Ohio-2134, ¶ 54; *State v. Zampini*, 11th Dist. Lake No. 2007-L-109, 2008-Ohio-531, ¶ 14; *State v. Midcap*, 9th Dist. Summit No. 22908, 2006-Ohio-2854, ¶ 12.

[*P37] Likewise, we find that Hartsook's enhanced sentence does not violate double jeopardy. The language of R.C. 4511.19 clearly indicates that the trial court has the discretion to impose a sentence for the underlying OVI charge in addition to the mandatory prison term for the specification under R.C. 2941.1413. R.C. 4511.19(G)(1)(e)(i) provides that:

> An offender who previously has been convicted of or pleaded guilty to a violation of [R.C. 4511.19(A)] that was a felony, regardless of when the violation and the conviction or guilty plea occurred, is guilty of a felony of the third degree. The court shall sentence the offender to all of the following: * * * *a mandatory prison term of one, two, three, four, or five years as required by and in accordance with division (G)(2) of section 2929.13 of the Revised Code if the offender also is convicted of or also pleads guilty to a specification of the type described in section 2941.1413 of the Revised Code * * *. The court may impose a prison term in addition to the mandatory prison term.*

(Emphasis added.) As noted in our analysis of Hartsook's first assignment of error, the sentence issued by the trial court in the present case is well within the limits established by the legislature. The trial court was required to issue a mandatory sentence of one, two, three, four, or five years: it issued a sentence of four years. Further, the trial court had discretion to impose up to an additional 36 months for the underlying OVI offense: it issued a sentence of 24 months.

[*P38] Accordingly, we find Hartsook's sentence did not constitute a double jeopardy violation.

*Hartsook,* 2014-Ohio-4528.

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution affords a defendant three basic protections:

> It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.

*Brown v. Ohio*, 432 U.S. 161, 165 (1977), *quoting North Carolina v. Pearce*, 395 U.S. 711, 717

(1969).  The Double Jeopardy Clause was held to be applicable to the States through the Fourteenth Amendment in *Benton v. Maryland*, 395 U.S. 784, 794 (1969).

The test for whether two offenses constitute the same offense for Double Jeopardy purposes is "whether each offense contains an element not contained in the other."  *United States v. Dixon*, 509 U.S. 688, 696 (1993); *Blockburger v. United States*, 284 U.S. 299, 304 (1932).  Where two offenses are the same for *Blockburger* purposes, multiple punishments can be imposed if the legislature clearly intended to do so. *Albernaz v. United States*, 450 U.S. 333, 344 (1981); *Missouri v. Hunter*, 459 U.S. 359, 366 (1983); *Ohio v. Johnson*, 467 U.S. 493, 499 (1984); and *Garrett v. United States*, 471 U.S. 773, 779 (1985).  *See also White v. Howes*, 586 F.3d 1025, 1035 (6th Cir. 2009)(observing that "[t]he current jurisprudence allows for multiple punishment for the same offense provided the legislature has clearly indicated its intent to so provide, and recognizes no exception for necessarily included, or overlapping offenses.")  The *Blockburger* test is a rule of statutory construction, not a constitutional test in itself.  *Volpe v. Trim*, 708 F.3d 688 (6th Cir. 2013), *citing Albernaz*.  "When assessing the intent of a state legislature, a federal court is bound by a state court's construction of that state's own statutes."  *Volpe, citing Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989).

Petitioner here was punished for one act – driving under the influence of alcohol. The Ohio General Assembly specified additional elements to control the level of the offense.  "Simple" OVI under Ohio law is a misdemeanor of the first degree with a maximum penalty of six months imprisonment.  But OVI plus the element that the offender has previously been convicted of OVI at the felony level becomes at felony of the third degree, pursuant to Ohio Revised Code § 4511.19(G)(1)(e).  If the State can then prove the additional element under Ohio Revised Code § 2941.1413 that the offender has been convicted five or more times of OVI in the last twenty

18

years, then the additional time for the specification is to be added. The offense of OVI + prior felony OVI + five OVI's in the last twenty years is a distinct offense under *Blockburger* because it requires proof of all those elements. Ohio did not punish Hartsook cumulatively for the past felony OVI and for the five prior OVI's within twenty years. It punished him once for the doubly enhanced offense which he committed. Had the case gone to trial, the State would have had to prove the underlying OVI plus the prior felony OVI conviction plus the five OVI convictions within twenty years, all by proof beyond a reasonable doubt. To offer an analogy, Ohio does not violate the Double Jeopardy Clause when it elevates a robbery to an aggravated robbery upon proof of use of a deadly weapon and then adds a mandatory three years of imprisonment if the State proves the deadly weapon was a firearm.

In neither the Petition nor the Traverse does Hartsook cite any Supreme Court precedent as being unreasonably applied by the Twelfth District. He seeks to undermine the Twelfth District's reliance on *United States v. Rodriquez,* 553 U.S. 377 (2008), but it is actually in point. In upholding Rodriquez's sentence under the Armed Career Criminal Act, which requires three prior qualifying convictions, the Court opined:

> "[T]his Court consistently has sustained repeat-offender laws as penalizing only the last offense committed by the defendant." *Id.,* at 747, 114 S. Ct. 1921, 128 L. Ed. 2d 745 (quoting *Baldasar* v. *Illinois,* 446 U.S. 222, 232, 100 S. Ct. 1585, 64 L. Ed. 2d 169 (1980) (Powell, J., dissenting)). When a defendant is given a higher sentence under a recidivism statute—or for that matter, when a sentencing judge, under a guidelines regime or a discretionary sentencing system, increases a sentence based on the defendant's criminal history—100% of the punishment is for the offense of conviction. None is for the prior convictions or the defendant's "status as a recidivist." The sentence "is a stiffened penalty for the latest crime, which is considered to be an aggravated offense because [it is] a repetitive one." *Gryger* v. *Burke,* 334 U.S. 728, 732, 68 S. Ct. 1256, 92 L. Ed. 1683 (1948).

553 U.S. at 385-86, quoting *Nichols v. United States*, 511 U.S. 738, 747 (1994)(some internal

quotation marks omitted).

Hartsook has not shown that the Twelfth District's decision is an unreasonable application of *Blockburger* and its progeny. His Second Ground for Relief should therefore be dismissed.

**Ground Three: Denial of Due Process and Equal Protection in Sentencing**

Mr. Hartsook claims that his sentence violates the Fourteenth Amendment Due Process and Equal Protection Clauses "because it bestows on the state the unfettered discretion to choose between to [sic] significantly different punishments when charging similarly situated OVI offenders." (Traverse, ECF No. 15, PageID 401.)

The Twelfth District decided this claim as the second part of Hartsook's second assignment of error. It held

### 2. Equal Protection

**[\*P39]** In the second principal argument of his second assignment of error, Hartsook observes that the state has the sole discretion to include or omit R.C. 2941.1413's repeat OVI offender specification in the indictment charging a defendant. He notes that a repeat offender charged with the specification must be sentenced to a mandatory one, two, three, four, or five-year prison term, but that the only mandatory time facing a repeat offender who is not charged and convicted of a specification is either a 60-day term of local incarceration or a 60-day prison term. Hartsook contends the state's discretion as to whether or not to include the specification on the charging instrument is a violation of the constitutional guarantees to equal protection of the law. He claims it permits an arbitrary and unequal operation of the OVI sentencing provisions on similarly situated repeat OVI offenders.[3]

FOOTNOTES

3 Hartsook also claims that a sentence based on R.C. 2941.1413 is a denial of the due process of law, but he fails to articulate a separate argument for that claim. Therefore, we presume his due process argument essentially duplicates the argument he made for equal protection. See *Chapman v. United States*, 500 U.S. 453, 465, 111 S.Ct. 1919, 114 L. Ed. 2d 524 (1991) (noting that where an offender has been duly convicted, the argument that his penalty is based on an arbitrary distinction that violates equal protection "essentially duplicates an argument based on due process"). *See also State v. Klembus*, 8th Dist. Cuyahoga No. 100068, 2014-Ohio-3227, ¶ 9, 17 N.E.3d 603 ¶ 9.

[*P40] The equal protection clause of the Fourteenth Amendment to the United States Constitution provides, "[n]o State shall * * * deny to any person within its jurisdiction the equal protection of the laws." Ohio's equal protection clause, Article I, Section 2 of the Ohio Constitution, provides, "[a]ll political power is inherent in the people. Government is instituted for their equal protection and benefit * * *." Because these two provisions are functionally equivalent, they require the same analysis. *State v. Williams*, 126 Ohio St.3d 65, 2010-Ohio-2453, ¶ 38, 930 N.E.2d 770, citing *Eppley v. Tri-Valley Local School Dist. Bd. of Edn.*, 122 Ohio St.3d 56, 2009-Ohio-1970, ¶ 11, 908 N.E.2d 401.

[*P41] "Equal protection analysis begins with the rebuttable presumption that statutes are constitutional." *State v. Peoples*, 102 Ohio St.3d 460, 2004-Ohio-3923, ¶ 5, 812 N.E.2d 963, citing *Adamsky v. Buckeye Local School Dist.*, 73 Ohio St.3d 360, 361, 1995 Ohio 298, 653 N.E.2d 212 (1995). Consequently, the burden is on the party asserting that the statute is unconstitutional to prove that the statute is unconstitutional beyond a reasonable doubt. *State v. Brownfield*, 12th Dist. Butler No. CA2012-03-065, 2013-Ohio-1947, ¶ 8. At the same time, "courts have a duty to liberally construe statutes in order to save them from constitutional infirmities." *Eppley* at ¶ 12, citing *Desenco, Inc. v. Akron*, 84 Ohio St.3d 535, 538, 1999 Ohio 368, 706 N.E.2d 323 (1999).

[*P42] Because of the presumption of constitutionality, the extent of the appellate court's review is determined by the nature of the appellant's challenge to the statute. *Eppley* at ¶ 13. A party may challenge a statute as either unconstitutional on its face, or as applied to a particular set of facts. *Harrold v. Collier*, 107 Ohio St.3d 44, 2005-Ohio-5334, ¶ 37, 836 N.E.2d 1165. A facial challenge is the most difficult to bring successfully because the challenger must establish that there are no circumstances under

which the statute would be valid. *Id*. Where statutes are challenged as applied to a particular set of facts, the challenger bears the burden of presenting clear and convincing evidence of a presently existing set of facts that make the statutes unconstitutional and void when applied to those facts. *Id*. at ¶ 38.

[*P43] In the present case, Hartsook's argument draws liberally from the logic of the majority opinion in *State v. Klembus*, 8th Dist. Cuyahoga No. 100068, 2014-Ohio-3227, 17 N.E.3d 603. In *Klembus*, the Eighth Appellate District found the appellant to be challenging the repeat OVI offender specification on its face, not as it was personally applied to him. *Id*. at ¶ 7. Hartsook appears to adopt the same position as the appellant in *Klembus*, so we will apply the standard of review for a facial challenge and consider the constitutionality of the statute without regard to the specific facts of Hartsook's case. *Id*., citing *Cleveland Gear Co. v. Limbach*, 35 Ohio St. 3d 229, 231, 520 N.E.2d 188 (1988).

[*P44] Next, we must discern the appropriate level of scrutiny. *Eppley* at ¶ 13. In considering whether a statute violates equal protection guarantees, courts apply different levels of scrutiny to different types of classifications. *State v. Thompson*, 95 Ohio St.3d 264, 2002-Ohio-2124, ¶ 13, 767 N.E.2d 251, citing *Clark v. Jeter*, 486 U.S. 456, 461, 108 S.Ct. 1910, 100 L. Ed. 2d 465 (1988). Statutes that make classifications based upon a suspect class are subject to strict scrutiny, as are statutes involving fundamental constitutional rights. *Thompson* at ¶ 13. Additionally, a statute that makes a classification based on sex or illegitimacy is subject to heightened or intermediate scrutiny. *Id*. Statutes that are not subject to either strict or heightened scrutiny are subject to rational basis review. *Eppley* at ¶ 15, citing *Menefee v. Queen City Metro*, 49 Ohio St.3d 27, 29, 550 N.E.2d 181 (1990).

[*P45] R.C. 4511.19 and R.C. 2941.1413 are not subject to strict scrutiny. Repeat OVI offenders are not a suspect class, and an individual does not possess a fundamental constitutional right to operate a vehicle, on multiple occasions, under the influence of alcohol or drugs. *See Young v. Rogers*, 12th Dist. Butler No. CA2001-08-183, 2002-Ohio-5135, ¶ 32-33, citing *State v. Williams*, 88 Ohio St.3d 513, 530, 2000 Ohio 428, 728 N.E.2d 342 (2000) (noting that a suspect class has traditionally been defined as one involving race, national origin, or religion, and that "fundamental rights" have been defined to include such rights as the right to vote, the right to procreate, and the rights guaranteed in the First Amendment). Neither do the statutes involve classifications based on sex or illegitimacy. Therefore, we proceed

22

to a rational basis review. *Peoples*, 102 Ohio St.3d at ¶ 7 (applying rational basis review in an analysis of judicial release under R.C. 2929.20 as applied to offenders sentenced to five-year prison terms).

**[*P46]** Under a rational basis review, a statute violates the equal protection clause only if the classifications it creates "'are based solely on reasons totally unrelated to the pursuit of the [s]tate's goals and only if no grounds can be conceived to justify them.'" *Williams*, 88 Ohio St.3d at 530, quoting *Clements v. Fashing*, 457 U.S. 957, 963, 102 S.Ct. 2836, 73 L. Ed. 2d 508 (1982). In conducting the analysis:

> [W]e are to grant substantial deference to the predictive judgment of the General Assembly. * * * The state does not bear the burden of proving that some rational basis justifies the challenged legislation; rather, the challenger must negative [sic] every conceivable basis before an equal protection challenge will be upheld.

*Id.* at 531, citing *Turner Broadcasting Sys. v. Fed. Communications Comm.*, 520 U.S. 180, 195, 117 S.Ct. 1174, 137 L. Ed. 2d 369 (1997); *Heller v. Doe*, 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L. Ed. 2d 257 (1993).

**[*P47]** We disagree with Hartsook's contention that R.C. 2941.1413 denies equal protection of the laws to repeat OVI offenders simply because the law leaves it to the prosecutor's discretion to insert — or not insert — the specification into the indictment. It is axiomatic that the decision about what charge to file or bring before the grand jury generally rests within the discretion of the prosecutor. *State v. Lawson*, 12th Dist. Clermont No. CA88-05-044, 1990 Ohio App. LEXIS 2195, 1990 WL 73845, *7 (June 4, 1990), citing *Bordenkircher v. Hayes*, 434 U.S. 357, 364, 98 S.Ct. 663, 54 L. Ed. 2d 604 (1978). *See also State v. Freeman*, 20 Ohio St.3d 55, 58, 20 Ohio B. 355, 485 N.E.2d 1043 (1985), citing *Snowden v. Hughes*, 321 U.S. 1, 8-9, 64 S.Ct. 397, 88 L. Ed. 497 (1944). It will not be presumed that a prosecutor's decision to prosecute has been invidious or in bad faith, and Hartsook has offered no argument that would call into question the rationale for the discretion that our legal system traditionally affords the prosecutor. *See State ex rel. Nagle v. Olin*, 64 Ohio St.2d 341, 347, 415 N.E.2d 279 (1980), citing *State v. Flynt*, 63 Ohio St.2d 132, 407 N.E.2d 15 (1980).

**[*P48]** Moreover, Hartsook has failed to offer an argument that

would suggest the cumulative punishment the legislature sought to impose under R.C. 4511.19 and R.C. 2941.1413 does not serve a legitimate government interest. Absent proof to the contrary, we are inclined to agree with the United States Supreme Court that the reasoning behind a sentencing regime that finds the latest offense for repeat OVI offenders to be an aggravated offense because it is a repetitive one is perfectly sound. *See Rodriquez*, 553 U.S. at 386.

[*P49] We recognize that in reaching this conclusion, we come to a different result than that reached recently by the majority of a three-judge panel of the Eighth Appellate District. *See Klembus*, 2014-Ohio-3227, 17 N.E.3d 603. In *Klembus*, the appellant pled no contest to two felony OVI charges under R.C. 4511.19(A)(1)(a), each of which had a repeat offender specification under R.C. 2941.1413. *Id*. at ¶ 5. The two OVI charges were merged at sentencing, and the appellant received a one-year prison term on the specification and one year on the underlying OVI offense, for an aggregate two-year prison term. *Id*. at ¶ 6.

[*P50] The Eighth Appellate District observed that there is no requirement under R.C. 2941.1413(A) that the specification be applied with uniformity, and found "no logical rationale for the increased penalty imposed on some repeat OVI offenders and not others without requiring proof of some additional element to justify the enhancement * * *." *Id*. at ¶ 23. Therefore, relying on the Ohio Supreme Court's analysis in *State v. Wilson*, 58 Ohio St.2d 52, 388 N.E.2d 745 (1979), the appellate court found that the repeat offender specification violates equal protection and remanded the cause to the trial court to vacate the specification from the indictment. *Klembus* at ¶ 23, 27.

[*P51] *Wilson* involved an appellant who was charged under both a simple burglary and an aggravated burglary statute. *Wilson* at 55. The appellant was found by the trial court to have violated both statutes, and was sentenced under the aggravated burglary statute, which carried a heavier penalty. *Id*. On appeal, he argued that because the aggravated burglary statute prohibits the same activity as the simple burglary statute yet carries a heavier penalty, the aggravated burglary statute denied equal protection of the law to burglary offenders sentenced under the aggravated burglary statute. *Id*. The Ohio Supreme Court noted that the equal protection clause is not violated when, based upon prosecutorial discretion, a person is charged under more than one statute and may thereby receive different penalties. *Id*. However, the court agreed that there could be an equal protection violation if two statutes prohibit identical activity, require identical proof, yet impose different penalties, and

if the offender is sentenced under the statute with the higher penalty. *Id.* at 56. Ultimately, the court found no equal protection violation because the two statutes did not require identical proof; the state had to prove an additional aggravating circumstance for the aggravated burglary. *Id.* at 57.

[*P52] We find the *Wilson* analysis, and therefore the *Klembus* conclusion, inapposite to this case. Whereas *Wilson* was dealing with two separate offenses, simple burglary and aggravated burglary, we are here dealing with a single offense, OVI. *See Klembus* at ¶ 33-45 (McCormack, J., dissenting), citing, inter alia, *Zampini*, 2008-Ohio-531. The inquiry, therefore, is not whether R.C. 4511.19 and R.C. 2941.1413 define two offenses that prohibit identical activity and require identical proof, but impose different penalties. As discussed above, we believe the language of the respective statutes clearly indicates that the General Assembly intended R.C. 4511.19 and R.C. 2941.1413 to authorize cumulative punishments for a single OVI offense by a repeat offender.

[*P53] Because Hartsook has failed to show that there is no rational basis which justifies the challenged statutes, an equal protection challenge cannot be upheld. *Williams*, 88 Ohio St.3d at 531. His second assignment of error is overruled.

*State v. Hartsook, supra.*

Petitioner's burden here, as with Grounds One and Two, is to show that this decision of the Twelfth District is an unreasonable application of clearly established Supreme Court precedent. Hartsook disclaims any membership in a suspect class or that the repeat OVI offender specification "infringes upon a fundamental right." (Petition, ECF No. 3, PageID 73.) The gravamen of his claim is that the prosecutor has unfettered discretion to charge the specification or not, depending on whether "he/she wants to expose the defendant to mandatory prison time or not." (Traverse, ECF No. 15, PageID 402).

But prosecutorial discretion in charging has never been held to violate equal protection unless, for example, it is based on some unconstitutional factor such as race. Prosecutors have very broad discretion, for example, in deciding whether to seek capital specifications in an

aggravated murder case, even if the facts would support such a specification.

The use of prosecutorial discretion in determining what charges or specifications to bring against a defendant, in and of itself, does not violate equal protection.  Where the selectivity in enforcement of the criminal laws is demonstrated to have been the product of unjustified discrimination based upon the defendant's race, religion, or some other arbitrary classification, a violation of the Equal Protection Clause may exist.  *Oyler v. Boles*, 368 U.S. 448, 456 (1962).

Hartsook says his argument is that the Twelfth District unreasonably applied *Chapman v. United States,* 500 U.S. 453 (1991).  There the Supreme Court rejected an argument that in determining the weight of LSD sold in computing a minimum sentence, the weight of the blotter paper on which it was carried had to be excluded.  The Twelfth District cited Chapman for the proposition that "where an offender has been duly convicted, the argument that his penalty is based on an arbitrary distinction that violates equal protection essentially duplicates an argument based on due process."  *State v. Hartsook, supra*, at n. 3.

To the extent Hartsook argues that the statutes involved themselves violate the Equal Protection or Due Process Clause (as opposed to a violation based on prosecutorial discretion), his argument is based on a false premise, to wit, that "the enhanced felony OVI and the repeat offender specification require the State to prove the exact same identical elements (Traverse, ECF No. 15, PageID 402), he is wrong.  As set forth under the Double Jeopardy analysis with Ground Two, to get to the position Mr. Hartsook was in at sentencing and without his plea, the State would have had to prove OVI + a felony OVI sometime in the past + five OVI's within twenty years.

Hartsook notes his equal protection argument is based in large part on *State v. Klembus*,

2014-Ohio-1830, 10 N.E. 3d 811 (8th Dist. May 1, 2014). As he candidly concedes in his Traverse (ECF No. 15, PageID 402), that decision has been unanimously reversed by the Ohio Supreme Court. *State v. Klembus*, 146 Ohio St. 3d 84 (2016). The court held "that the two statutes are part of a logical, graduated system of penalties for recidivist OVI offenses. They are rationally related to the protection of the public and punishment of offenders and therefore do not violate equal protection." *Id.* at ¶ 2.

Drunk driving is an extremely dangerous offense which kills more Americans every year than any other crime.[3] See *South Dakota v. Neville,* 459 U.S. 553 (1983). Nonetheless, a first offense is treated very lightly by the State. Once a repeated offender's conduct reaches the felony level, the State has good reason to believe the person cannot control his alcohol consumption and is likely to offend again. Hence the threat of more serious punishment is thought possibly to be a deterrent. When one has accumulated five or more OVI offenses in a twenty-year period, the pattern is even more evident, the likelihood of recidivism is greater, and it is completely rational to enhance the penalty.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends that the

---

[3] The Foundation for Advancing Alcohol Responsibility reports that in 2014, the total number of alcohol-impaired driving fatalities in the United States was 9,967 people. http://responsibility.org/get-the-facts/research/statistics/ drunk-driving-fatalities/ (last visited September 14, 2016)(citing the National Highway Traffic Safety Administration). Thousands more were injured as well. *Id.*

Petition herein be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion as to Grounds Two and Three, Petitioner should be denied a certificate of appealability on those Grounds.   However, as to Ground One the Magistrate Judge believes the question is close enough to grant a certificate.

September 15, 2016.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).